IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| HAROLD M. LAIRD, #659512 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv131 |
| GERALD B. GOWER, JR., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Harold M. Laird, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendant remaining in the lawsuit is Gerald B. Gower. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendant's motion for summary judgment (docket entry numbers 31 and 53) and the Plaintiff's response (docket entry #35).

### Facts of the Case

The original complaint was filed on April 7, 2008. The Plaintiff alleged that prison personnel failed to protect him, which resulted in another inmate brutally assaulting him. On August 19, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The incident which is the subject of the lawsuit occurred at the Coffield Unit on January 25, 2008, in a portion of administrative segregation often referred to as Super Segregation. That area consists of only twelve cells. The Plaintiff was out of his cell for recreation and a shower. While he was out of his cell, Sgt. Gower removed inmate Casas

1

from his cell to take him to recreation. On the way to recreation, Casas changed his mind and indicated that he wanted to return to his cell. Sgt. Gower then started taking Casas back to his cell, but he placed Casas in the Plaintiff's cell and locked the door. Later, Sgt. Gower, along with Officers Bolton and Canada, returned the Plaintiff to his cell. The door was closed and locked. Ordinarily, the cell doors are kept open when an inmate goes to recreation and shower. The Plaintiff asked Officer Bolton why his cell door was locked. Officer Bolton indicated that he did not know why the door was locked. Sgt. Gower stated that he had not locked the door. It is noted that all of the doors in Super Segregation were locked manually and that only the sergeant had the key. Sgt. Gower was the only person who could have locked the door. The Plaintiff told Sgt. Gower, "Man, that's how people can get hurt. People have gotten their brains beat out like this." Sgt. Gower responded by telling the Plaintiff that he was "in good hands." Sgt. Gower unlocked the door and placed the Plaintiff inside of his cell. The Plaintiff was fully restrained at the time. Before he had the chance to place his hands through the bean slot to have the restraints removed, the Plaintiff was attacked by inmate Casas, who had been hiding behind the bed. Inmate Casas placed the Plaintiff in a headlock and jerked his head. The Plaintiff lost consciousness. While this was going on, the officers did not do anything to help the Plaintiff. Furthermore, when Officer Canada started to flip the alarm to ask for help from additional officers, she was told to hold up by Sgt. Gower. The next thing the Plaintiff knew was that he was coughing after guards sprayed pepper gas into the cell. He was faced down on the floor, spitting blood, had a tooth missing and was hurting all over. Officer Walker subsequently told the Plaintiff that they had to take the keys away from Sgt. Gower so that they could open the door and end the assault on the Plaintiff. The Plaintiff was taken to the infirmary for medical care.

The Plaintiff's testimony reveals that he sued Sgt. Gower for a long list of reasons. Sgt. Gower placed inmate Casas in the Plaintiff's cell and locked the door. When the Plaintiff was returned to his cell, which was locked, Sgt. Gower should have examined the cell to make sure that it was safe to place the Plaintiff in it. Once the attack begun, he should have taken steps to stop the attack, such as by using pepper spray. It is noted that the Emergency Action Center Report specified that Officer Bolton was the one who actually used pepper spray. Sgt. Gower also stopped Officer Canada from flipping the alarm. He failed to unlock the door even when additional officers showed up to help. The Emergency Action Center Report reveals that Sgt. See was the one who unlocked the door, while Sgt. Ham and Officer Stanley entered the cell and restrained inmate Casas.

Nurse Barbara Hughes testified under oath that the Plaintiff was taken to the infirmary but he did not immediately want medical care. The Plaintiff was examined later that day. He had a lacerated upper lip, which was sutured. A bottom tooth was missing. X-rays revealed that the eighth and ninth ribs were possibly fractured, but there is no treatment for such fractures. Chip Satterwhite testified under oath that Sgt. Gower was dismissed as a result of the incident. The Plaintiff was permitted to proceed with his claims against Sgt. Gower. The claims against the remaining Defendants were dismissed on September 24, 2008.

## Defendant's Motion for Summary Judgment

Defendant Gower filed a motion for summary judgment (docket entry #31) on November 17, 2008. The motion is supported by his own affidavit (docket entry #53) and a copy of T.D.C.J.'s Emergency Action Center Report compiled as a result of the incident. The Defendant argued that he is entitled to Eleventh Amendment immunity for claims made against him in his official capacity and is entitled to qualified immunity for claims made against him in his individual capacity.

The Defendant stated in his affidavit that he was a sergeant supervising the offenders and staff in the separate segregation unit on January 25, 2008. He was working with Officers Bolton and Canada at the time of the incident. They were escorting offenders between the recreation area, the showers and their cells. The offenders housed in the separate segregation unit must be escorted at all times when they are out of their cells due to their custody status. His recollection of the incident is that the officers removed the Plaintiff from the day room and placed him in the shower. They next removed inmate Casas from his cell so that he could have his recreation time in the day room. When Casas arrived at the day room, he decided that he wanted to go back to his cell. The Defendant specified that the "three of us escorted Casas back in his cell or what I thought to be his cell. However, I mistakenly placed Casas in Offender Laird's cell." He noted that Cases was assigned to cell number eight, while the Plaintiff was assigned to cell number nine. The officers then went to the showers to return the Plaintiff to his cell. Cell number nine was locked when they arrived at the cell. The Defendant stated that he unlocked the door and looked inside to make sure that it was empty. He did not notice that anything was wrong, and the Plaintiff was placed in the cell. He locked the door. He started to remove the restraints from the Plaintiff. As he was doing so, inmate Casas came out of hiding in the Plaintiff's cell and began assaulting the Plaintiff. The Defendant stated that he then gave the order for chemical agents to be used to control the situation. Officer Canada sounded the alarm and additional staff arrived. The cell door was opened and Casas was removed from the cell. The Defendant specified that he assisted restraining offender Casas. Due to the use of chemical agents, he had trouble breathing. He left the scene and went to the infirmary. The Defendant specified that he did not intentionally place the Plaintiff in the cell with another inmate. He believes that he acted reasonably at all time relevant to the complaint.

The Emergency Action Center Report included a large number of documents. The criminal backgrounds of the Plaintiff and Casas were noted. They were both confined in Super Segregation because of their behavior. The summary of events is consistent with the discussion provided by the Defendant. It was noted that the Defendant and Officer Bolton ordered inmate Casas to stop assaulting the Plaintiff and he refused to obey the orders. Offender Bolton then used a chemical agent, while Officer Canada sounded the alarm. Additional staff arrived on the scene. Sgt. See unlocked the cell door. Sgt. Ham and Officer Walker entered the cell to restrain inmate Casas. Inmate Casas was removed from the cell and placed on the floor. The Defendant and Officer Crowley also assisted in restraining Casas. Restraints were placed on Casas. Inmate Casas was then assisted to his feet and escorted out into the hallway. Leg restraints were placed on him by Sgt. Garza. Inmate Casas was removed from the area. The Plaintiff was removed from his cell and escorted to a day room for a physical examination and decontamination. He was treated for a lacerated lip, which required five sutures, and a missing tooth. The Emergency Action Center Report included a number of statements by the participants in the incident. Medical records and injury reports were likewise included.

The Defendant discussed summary judgment standards in arguing that he is entitled to summary judgment. He again argued that he is entitled to Eleventh Amendment immunity to the extent that he was sued in his official capacity. He argued that he is entitled to qualified immunity to the extent that he was sued in his individual capacity. He specifically argued that he was not deliberately indifferent to the Plaintiff's safety. He argued that he did not ignore a serious risk to the Plaintiff's safety. The details of his arguments will be discussed more fully in the Discussion and Analysis section of this opinion.

## Plaintiff's Response

The Plaintiff filed a response to the motion for summary judgment (docket entry #35) on December 1, 2008. He asserted that he did not sue the Defendant in his official capacity; instead, he sued the Defendant only in his individual capacity. He argued that the Defendant was not entitled to summary judgment based on qualified immunity. He argued that the deliberate indifference standard is the same as the "subjective recklessness" standard, as used in criminal law. He asserted that the Defendant knew that there was a substantial risk of harm before he unlocked the Plaintiff's cell door. He noted that Officer Bolton asked the Defendant about the cell door being locked. He noted that the Defendant replied that he had not locked the door, but Officer Bolton told him that he was the only one with the keys. The Plaintiff noted that he made the following comment: "That's how people get hurt. People have gotten their brains beat out like that." He noted that the Defendant's own statement indicated that he made a response about people being beaten to death, which placed the Defendant on notice about the seriousness of the situation. He noted that the Defendant admitted that he must have locked the door. The Plaintiff argued that the Defendant did not follow policy when he failed to investigate the matter. The Plaintiff noted that the Defendant placed Casas in the cell only four or five minutes earlier. He argued that the Defendant either knew he placed Casas in the cell or that he was plainly incompetent. He argued that in either case the Defendant would not be entitled to qualified immunity.

The Plaintiff further argued that the Defendant was not entitled to summary judgment based on qualified immunity because he failed to protect him once the attack was under way. He noted that the statements provided by other inmates support his version of events. He stressed that for four or five minutes nothing was being done to stop the assault. The Defendant stopped Officer Canada

from sounding the alarm. He asserted that the Defendant had a propensity to add to his statements to bolster his claims. For example, the Defendant asserted that he ordered Officers Bolton and Canada to take steps to stop the assault, but the statements by Bolton and Canada do not mention such orders. The Plaintiff's observations are correct. It is noted that Officer Canada stated that Officer Bolton asked the Defendant whether he had locked the door, and the Defendant stated that he must have. The Defendant then unlocked the door and placed the Plaintiff in his cell. Officer Canada further stated that she heard some noises and then heard the Defendant and Officer Bolton screaming, "stop." She ran to the alarm and turned it on. Officer Canada's statement does not mention anything about the Defendant instructing her to sound the alarm. Officer Bolton's statement likewise noted that he took steps in response to Casas' actions by ordering him to stop and by using a chemical agent. He did not mention anything about receiving orders from the Defendant to use the chemical agent.

In conclusion, the Plaintiff asserted that he has alleged a violation of his constitutional rights, that the right was clearly established at the time of the incident and that there is a genuine issue of material fact in dispute as to whether the Defendant engaged in violating his constitutional rights. He thus argued that the Defendant is not entitled to summary judgment. He stressed that the Defendant was made aware of the danger of placing him in the cell, and that there were policies designed to prevent such assaults. Nonetheless, the Defendant placed him in the cell. Moreover, he failed to take steps to stop the assault once it began.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail

to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The first issue raised by the Defendant concerns official immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that neither a state nor a state official is a "person" for purposes of liability under 42 U.S.C. § 1983. On the other hand, a lawsuit may be "brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053-54 (5th Cir. 1998). In the present case, the Plaintiff specified that he has not sued the Defendant in his official capacity. He sued him only in his individual capacity. Consequently, the Defendant is correct in arguing that he cannot be sued in his official capacity for damages, but the argument is moot since he was not sued in his official capacity.

The second issue concerns the Defendant's claim that he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions

could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee).

The Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194 (2001). First of all, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201. Second, if the Plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his or her conduct was objectively unreasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should

be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 818. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821. The Supreme Court went on to discuss the facts of the case and found that the defendants were entitled to qualified immunity because the officers' conduct did not violate clearly established law." *Id.* at 822.

Issues concerning qualified immunity should be resolved at the earliest possible stage. When factual issues are still in dispute at the time of trial, a court may not be able to make a decision as to whether officers are entitled to qualified immunity until the factual issues are resolved by a jury. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993). In such cases, the jury will have to decide "the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of existing law and facts available to them." *Id.* at 435. *See also Presley v. City of Benbrook*, 4 F.3d 405, 409-10 (5th Cir. 1993). The Fifth Circuit has also held that "while qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

The Court will employ the traditional two-step analysis discussed by the Supreme Court in *Saucier*. The threshold question is whether taken in the light most favorable to the Plaintiff, do the

facts alleged show that the Defendant's conduct violated a constitutional right? The Plaintiff complained that the Defendant failed to protect him. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Plaintiff correctly noted in his response that "subjective recklessness," as used in criminal law, is the appropriate test for deliberate indifference. *Id.* at 838-40; *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). The Supreme Court recognized a distinction between recklessness as "fail[ing] to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" and recklessness as disregarding a risk of harm that is actually known. *Id* at 835-38. The former amounts to objective recklessness, while the latter is subjective recklessness. *Id.* at 837. The Plaintiff must show subjective recklessness. In other words, he must show that the Defendant disregarded a risk of harm that was actually known to him. The Plaintiff may rely on circumstantial evidence to show that the Defendant must have known about the risk of harm because it was obvious. *Id.* at 842; *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

The Fifth Circuit has applied this standard in several cases. In *Newton v. Black*, 133 F.3d 301 (5th Cir. 1998), the Fifth Circuit upheld a decision dismissing a deliberate indifference claim against a lieutenant who was mistaken in his conclusion that the plaintiff was not in danger, which had the effect of permitting another inmate to attack the plaintiff. The claim that the lieutenant should have known that the other inmate was a risk to the plaintiff was not enough.

In *Cantu v. Jones*, 293 F.3d 839 (5th Cir. 2002), the Fifth Circuit held that the jury was to decide whether officers were deliberately indifferent to the plaintiff when they allegedly left another inmate's cell door open and allowed him to escape to assault the plaintiff. The jury was to decide the fact question of whether the officers were aware that the attack was going to happen and failed to protect the plaintiff. *Id.* at 845.

In *Adames v. Perez*, *supra*, a Texas prison inmate sued several prison officials because they failed to protect him from an attack by another inmate. The Fifth Circuit held that just because officials knew of isolated incidents where inmates had escaped from their cells did not mean that they had reason to be aware that the plaintiff faced a risk of substantial harm at that time unless the problem was "longstanding and pervasive." 331 F.3d at 513. Moreover, the failure of officers to follow standard safety procedures by conducting cell searches on a regular basis and checking cell doors was insufficient to show deliberate indifference. *Id.* The Fifth Circuit added that deliberate indifference is not shown simply by showing that officers were derelict in their duties. *Id.* Instead, a prison official cannot be liable unless he was aware that there was a substantial risk of serious harm to the inmate. *Id.*

In *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006), a Texas prison inmate was stabbed by fellow inmates for being a "snitch." The Fifth Circuit held that Officers Farr, Staggs and Rogers

were not deliberately indifferent because they were unaware of the inmate's activities as an informant and that they were unaware that he had reported his fear of being attacked to another officer. *Id.* at 594. The Fifth Circuit also held that these unarmed officers were not required to endanger their own safety by intervening in an attack among armed inmates. *Id.* at 593-94.

In the present case, taking the facts in a light most favorable to the Plaintiff, it is clear that the Defendant made a mistake by placing inmate Casas in the Plaintiff's cell. There is a disputed issue of fact as to whether the Defendant checked the cell before placing the Plaintiff in the cell. Nonetheless, taking the facts taken in a light most favorable to the Plaintiff, the Plaintiff must show that the Defendant was aware of and disregarded a substantial risk of harm to him. The facts in this case, however, at best show that the Defendant should have been aware of the fact that Casas was in the cell and thereby posed a substantial risk of harm to the Plaintiff. The facts support a claim of objective recklessness, as opposed to subjective recklessness. The Defendant cannot be held liable because he was negligent or derelict in checking the cell, although it is again noted that there is a disputed issue of fact concerning whether the Defendant actually checked the cell. The dispositive factor is that the facts do not support a conclusion that the Defendant was actually aware that Casas was in the cell and that he, nonetheless, placed the Plaintiff in the cell. The facts taken in a light most favorable to the Plaintiff do not support a conclusion of deliberate indifference.

The Plaintiff also alleged that the Defendant was deliberately indifferent because he failed to take steps to stop the attack. There are disputed issues of fact regarding what the Defendant actually did in this case. Nonetheless, there is no dispute that Officer Bolton used a chemical agent to stop the assault. Similarly, there is no dispute that Officer Canada sounded the alarm. There is no dispute that officers other than the Defendant entered the cell and stopped the assault. The

Defendant may not be held liable because he failed to personally physically intervene to stop the assault or because he was not the person who actually used the chemical agent or sounded the alarm. The facts taken in a light most favorable to the Plaintiff do not show that the Defendant's actions after the assault began amounted to deliberate indifference. Moreover, the Defendant's actions can not be characterized as objectively unreasonable in light of the total circumstances, as required to satisfy the second prong in the qualified immunity analysis. At most, the facts attributed to the Defendant show that he froze after the assault began, as opposed to acting wantonly towards the Plaintiff for the very purpose of causing him pain. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Stewart v. Murphy*, 174 F.3d 530, 533-34 (5th Cir. 1999). It is accordingly

**ORDERED** that the Defendant's motion for summary judgment (docket entry numbers 31 and 53) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **18** day of **March, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE